

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

No. 06-13-00178-CR

ANTHONY FERNANDO STRANGE, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41833-A

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

O P I N I O N

After pleading not guilty and waiving a jury, Anthony Fernando Strange[1] was tried by the trial court for aggravated assault of Natalie Johnson, a second degree felony. The trial court found Strange guilty and sentenced him to ten years' imprisonment.

Strange contends that the trial court erred in overruling his objections to evidence obtained by an invalid search warrant[2] and that the evidence was legally insufficient to support the verdict. We find that the search warrant was valid and that the evidence is sufficient, and we affirm the judgment of the trial court.

I.    Background

On the morning of August 12, 2012, Strange was having a heated argument with his live-in girlfriend, Arentia Square.[3] Johnson, who had spent the night at Strange's house, sought to defuse the argument by taking Square and her teenage son away from the house in her automobile. As she was backing out of the driveway, Strange came out of the house with a rifle and began shooting at the automobile. Johnson attempted to speed away, but the automobile stopped suddenly. Johnson checked to see if she had been hit, then she, Square, and her son fled on foot to a neighbor's house. Strange went inside his house carrying his rifle, then came back

---

[1]The indictment reads *The State of Texas v. Anthony Fernando Strange*." Several witnesses identified the defendant as "Fred Strange."

[2]Strange filed a pro se motion to suppress pretrial, which was not heard before trial. Initial arguments regarding suppression were heard when the State first attempted to introduce evidence obtained in the search and Strange objected to the same. The trial court overruled the objection and granted a running objection to all evidence obtained in the search. Evidence from the search was not admitted until the motion to suppress was denied after a hearing on the second day of trial.

[3]Also identified as "Arentia Strange" and "Target." It is unclear whether Square is Strange's wife.

out, without the rifle, and followed Square to the neighbor's house. In the subsequent investigation, it was determined that several bullets hit Johnson's car, as well as two houses across from Strange's house.

## II. Validity of the Search Warrant

Strange contends that the search warrant failed to describe with sufficient particularity the place to be searched in violation of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution.[4] The warrant authorizes a search of "the suspected *vehicle* described in said affidavit, to wit; 205 East Birdsong, Longview, Gregg County, Texas 75602, the entire lot including curtilage, front and back yard and any and all sheds, containers, and the like." (Emphasis added). Strange directs our attention to the obvious fact that the literal wording of the warrant authorizes a search of a vehicle, not a residence. Both the United States Constitution and the Texas Constitution require a search warrant to describe the place to be searched with particularity. U.S. CONST. amend. IV; TEX. CONST. art. I, § 9.[5]

A valid search warrant must sufficiently describe the place to be searched "to prevent a mistaken execution of the warrant against an innocent third party." *Green v. State*, 799 S.W.2d 756, 757 (Tex. Crim. App. 1990) (citing *Bridges v. State*, 574 S.W.2d 560 (Tex. Crim. App.

---

[4]Strange merely cites to the Fourth Amendment and Article I, Section 9 in his appellate brief; he fails to cite any relevant caselaw. Appellate counsel is required to "cite specific legal authority and to provide legal argument based upon that authority." *Rhoades v. State*, 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (citing *Vuong v. State*, 830 S.W.2d 929, 940 (Tex. Crim. App. 1992)). Where adequate briefing is not provided, the contention may be overruled. *Id.*; *Heiselbetz v. State*, 906 S.W.2d 500, 512 (Tex. Crim. App. 1995). However, in the interest of justice and since the State has briefed this point under Texas law, we will address this point of error.

[5]The Fourth Amendment states that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. The Texas Constitution provides that "no warrant to search any place, or to seize any person or thing, shall issue without describing them as near as may be, nor without probable cause, supported by oath or affirmation." TEX. CONST. art. I, § 9.

1978)). When the affidavit in support of the search warrant is incorporated into the warrant, the two are considered together in defining the place to be searched, "but the description in the affidavit controls over the language in the warrant itself." *Long v. State*, 132 S.W.3d 443, 446 n.11 (Tex. Crim. App. 2004) (citing *Riojas v. State*, 530 S.W.2d 298, 303 (Tex. Crim. App. 1975)).[6] When the place to be searched is particularly described in the affidavit and the affidavit is attached and incorporated into the search warrant, then the place to be searched is sufficiently described in the warrant. *Phenix v. State*, 488 S.W.2d 759, 764 (Tex. Crim. App. 1972). Further, while keeping in mind the constitutional objectives of the "particularity" requirement,[7] when courts interpret affidavits and search warrants they "must do so in a common sense and realistic fashion and avoid hypertechnical analysis." *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976) (citing *United States v. Ventresca*, 380 U.S. 102 (1965); *Powell v. State*, 505 S.W.2d 585 (Tex. Crim. App. 1974)).[8]

---

[6]*See also Green*, 799 S.W.2d at 760; *Madrid v. State*, 595 S.W.2d 106, 107 (Tex. Crim. App. [Panel Op.] 1979); *Cantu v. State,* 557 S.W.2d 107, 108–09 (Tex. Crim. App. 1977); *Greene v. State*, 358 S.W.3d 752, 756 (Tex. App.—Fort Worth 2011, pet. ref'd); *Rios v. State*, 901 S.W.2d 704, 706 (Tex. App.—San Antonio 1995, no pet.).

[7]These include

> 1) ensuring that the officer searches the right place; 2) confirming that probable cause is, in fact, established for the place described in the warrant; 3) limiting the officer's discretion and narrowing the scope of his search; 4) minimizing the danger of mistakenly searching the person or property of an innocent bystander or property owner; and 5) informing the owner of the officer's authority to search that specific location.

*Long*, 132 S.W.3d at 447.

[8]Neither Strange nor the State briefed the alleged violation under the Fourth Amendment. However, the federal rule appears to be the same when the affidavit is fully incorporated into the warrant. Below, Strange relied on *Groh v. Ramirez*, 540 U.S. 551 (2004), in which the Supreme Court held a search warrant invalid for lack of particularity. However, the warrant in that case did not incorporate the affidavit supporting the application. The majority opinion in *Groh* stated,

4

In *Faulkner*, the affidavit was attached to the search warrant, which stated that the affidavit "is here now made part hereof for all purposes." However, the warrant neither described the place to be searched nor the things to be seized other than as "described in said affidavit." *Id.* at 743. The affidavit, however, fully described both. The Court of Criminal Appeals reaffirmed that incorporating an affidavit and attaching it to a warrant make it a part of that warrant. *Id.* The court then construed them together using "[c]ommon sense" to find that, since the affidavit fully described the premises to be searched and the things to be seized, the warrant was valid. *Id.* at 744.

Similarly, in the instant case, the warrant recites that the affidavit is "attached hereto" and that it is "here now made a part hereof for all purposes and incorporated herein as if written verbatim within the confines of this Warrant." The warrant, in relevant part,[9] goes on to command the executing officer to

> enter the suspected *vehicle* described in said affidavit, to-wit; 205 East Birdsong, Longview, Gregg County, Texas 75602, the entire lot including curtilage, front and back yard and any and all sheds, containers, and the like. At said places you shall search for and, if same be found, seize and bring before me . . . items used in the commission of said offense that may be found therein and be allowed to photograph, measure, sketch and draw all areas of the location including the *vehicle* on said premises and within the curtilage.

(Emphasis added).

---

> We do not say that the Fourth Amendment prohibits a warrant from cross-referencing other documents. Indeed, most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant.

*Id.* at 557–58.

[9]Strange only complains of the description of the place to be searched. No complaint is made regarding the description of the things to be seized.

5

The affidavit attached to the warrant fully describes the place to be searched as follows:

There is in GREGG County, Texas, a suspected place and premises described and located as follows: 205 East Birdsong, Longview, Gregg County, Texas 75602, described as a single family habitation with an attached garage and lot owned by Robert Dailey rented by Anthony Strange, Suspect. Said suspected place, includes a tan wood frame home on a pier and beam foundation with a southward facing front porch enclosed by a brown front door. The legal description of said premise to be searched is LT 2L NCB 423 LONGVIEW JOHNSON ACREAGE as filed with the Gregg County Appraisal District. Said premises and curtilage, which are found to be under the care, control, and custody of Anthony Strange and in, on, or around which said premise may reasonably conceal or secrete property which is the object of the search requested herein.

The affidavit describes, in great detail, the location of a dwelling—a single-family habitation with attached garage. The location of the "tan wood frame home on a pier and beam foundation with a southward facing porch enclosed by a brown front door" is described not only by home address, but also with a legal description. The description in the affidavit clearly and specifically describes with particularity the place to be searched. Nowhere in the affidavit is a search of a vehicle requested. Further, the only mention of a vehicle in the affidavit indicates that, although it had been parked at the location at the beginning of the incident, it had "pulled away from the home" when Strange began discharging bullets in its direction.

In addition, Officer Kevin Freeman, who signed the affidavit, testified that it was his intent to obtain a warrant for a residence, not a vehicle, and that is what he thought was issued. Officer Terry Davis, who signed the return of the search warrant, testified that the affidavit attached to the warrant has a "pretty thorough description of that residence" and that, in his opinion, the description in the search warrant would include the residence at 205 East Birdsong.

6

A realistic analysis of the description in the affidavit and the testimony of the officers reveals that this warrant intended a residence, not a vehicle, to be searched.[10]

On facts almost identical to these, the San Antonio Court of Appeals found the discrepancy between an affidavit, which described a residence and not a vehicle, and the warrant, which incorporated the affidavit but commanded the search of "the suspected vehicle," to be an obvious clerical mistake that did not invalidate the search warrant. *Rios*, 901 S.W.2d at 706–07. At the hearing on the motion to suppress in this case, Strange sought to distinguish *Rios* by highlighting the fact that there was testimony from the person who prepared the warrant supporting the conclusion that the warrant contained a typographical error. This argument relies on the Texas Court of Criminal Appeals' opinion in *Green*, which states that "technical defects" may be cured by explanatory testimony. The *Green* opinion continues, "We have never held such defects are curable solely by reference to another document which is itself a part of the controversy." *Green*, 799 S.W.2d at 760. However, in *Green*, and in the cases it cites, there was a discrepancy between the dates of the search warrant and the supporting affidavit and a "total lack of evidence" supporting the State's contention of a clerical error. *Id.* at 761. Determining which date was correct was crucial since it would determine whether the warrant was stale when executed. Under these circumstances, the Court of Criminal Appeals held that the defect in the dates could not be cured solely by looking to the two documents; rather, some explanatory testimony was required. *Id.*

---

[10]There is no evidence that any vehicle located on the premises was searched. The only vehicle searched was that of Johnson, the complainant, and testimony shows it was not on the premises at the time. There is no allegation that the search of the Johnson vehicle was invalid.

In this case, the scope of the search warrant can be determined by examining the two documents, as discussed above. Further, if necessary, Officers Freeman and Davis provided corroborating testimony showing that the word "vehicle" in the search warrant was a clerical error as the affidavit only requested the search of a single-family habitation. Strange offered no evidence that this was anything other than a mistake.

Accordingly, we conclude that the trial court did not err in admitting the evidence seized during the search. We overrule Strange's first point of error.

## III.     Sufficiency of Evidence

In his second point of error, Strange contends that the evidence is legally insufficient to support the verdict. We find the evidence sufficient and affirm the trial court's judgment.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the trier of fact's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the trier of fact "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.*

In this case, the elements of aggravated assault require proof beyond a reasonable doubt that Strange (1) intentionally or knowingly, (2) threatened Johnson with imminent bodily injury (3) while using or exhibiting a deadly weapon. *See* TEX. PENAL CODE ANN. § 22.01(a)(2) (West Supp. 2014), § 22.02(a)(2) (West 2011). Under the Texas Penal Code, a firearm is defined as a "deadly weapon." TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West Supp. 2014). On appeal, Strange only challenges the sufficiency of the evidence to support the elements that (1) he threatened Johnson with imminent bodily injury and (2) that he used or exhibited a deadly weapon.[11]

### A. Threatened With Imminent Bodily Injury

Strange argues that, in order to be convicted of aggravated assault, the evidence must show that he threatened Johnson with imminent bodily injury and that Johnson's testimony indicates she did not deem his actions threatening to her. In *Olivas v. State*, 203 S.W.3d 341 (Tex. Crim. App. 2006), the Court of Criminal Appeals examined whether the "threatened"

---

[11]Under this point of error, Strange only argues the sufficiency of evidence to show that he threatened Johnson with imminent bodily injury. However, in his first point of error, he argues that, without the admission of the rifle and other evidence obtained during the search of the premises, there was insufficient evidence to show he used or exhibited a deadly weapon.

9

element of aggravated assault required the victim to perceive a threat of imminent bodily injury at the time it was made.[12]  *Id.* at 343–49.  The court noted that the ordinary definitions of "threatening" could "indicate either an act that is communicated by the actor to another, regardless of whether it is successfully perceived by the intended recipient, or one that is successfully communicated to the intended recipient."  *Id*. at 346.  After comparing the aggravated assault statute to other penal statutes containing "threaten" as an element, such as the aggravated robbery and terroristic threat statutes, the court concluded that these statutes

> imply that one can threaten without necessarily placing another in fear of imminent bodily injury.  A logical inference from this is that "threatening," as used in the Penal Code, does not require that the intended victim perceive or receive the threat, but "placing another in fear of imminent bodily injury" does.

*Id.*; *see also Boston v State*, 410 S.W.3d 321 (Tex. Crim. App. 2013); *Fagan v. State*, 362 S.W.3d 796 (Tex. App.—Texarkana 2012, pet. ref'd).  Nevertheless, since there was sufficient evidence in *Olivas* to show the victim perceived the threat, the Court of Criminal Appeals did not "definitively resolve the question of whether an alleged victim must perceive the threat to establish the crime of assault by threat."  *Olivas*, 203 S.W.3d at 349.

Similarly, in this case, we find there is sufficient evidence in the record for a rational trier of fact to find beyond a reasonable doubt that Johnson did in fact perceive a threat of imminent bodily injury.  Johnson testified that, as she was backing her vehicle out of Strange's driveway, she saw him come out of the house with a long gun and cock and aim it at her vehicle.  When she saw this, she hit the accelerator to get away from the gun.  As she tried to drive away, she heard

---

[12]In *Olivas*, the victim testified that she felt threatened by the defendant even though she did not realize until later that he had fired shots at her vehicle.

gun shots and the vehicle stopped. Johnson was in "shell shock" and checked to see if she was hit before she, Square, and Square's son ran from the vehicle to a neighbor's house. Johnson testified that she was "scared" and that she learned three bullets had ricocheted off the back of her car and that one had gone through a back tire and one through the gas tank. She described the gun as "long and big." When they reached the neighbor's house, she and Square's son were crying. She described herself as hysterical, and she kept saying to the police, "He's shooting it, he's shooting it."

To show that Johnson did not perceive a threat, Strange relies on Johnson's testimony that she did not think he was trying to shoot her personally and "didn't feel threatened in that way." This seemingly contradictory testimony, which was resolved by the fact-finder, could reasonably be interpreted to mean that, while Johnson did not think Strange intended to shoot her, rather than another occupant of the vehicle, she did perceive his actions in aiming a rifle and firing at the vehicle she was driving as a threat of imminent bodily injury to her. As a result of the threat, she ran from the disabled vehicle and was scared, hysterical, crying, and in shock. A reasonable fact-finder could infer from this evidence that Strange threatened Johnson with imminent bodily injury by his actions, that Johnson perceived the threat, and that Johnson was placed in fear of imminent bodily injury because of Strange's actions.

### B. Using or Exhibiting a Deadly Weapon

Strange asserts that, but for the admission into evidence of the rifle and bullet casings found pursuant to the search warrant, there would have been insufficient evidence to support a finding that he had used or exhibited a deadly weapon. Although we have found that the search

11

warrant was valid and the evidence found pursuant to it was therefore properly admitted into evidence, we also find that, even excluding this evidence, there was sufficient evidence to find beyond a reasonable doubt that Strange used a deadly weapon—a firearm. This Court has previously upheld a conviction for aggravated assault involving a firearm based on witness testimony that the defendant pulled a gun and shot at the victim, even though the particular firearm was never identified. *Fagan*, 362 S.W.3d at 797–99, 801.

As noted earlier, Johnson testified that Strange exited the house with a "long and big" gun, that he cocked, aimed, and fired the gun, and that bullets struck her vehicle. Tonya Howard lives at 200 East Birdsong, across the street from Strange. Howard testified that she saw a man come out of his house with a gun and start shooting. She later learned that one of the bullets had embedded in a closet door in her house. Alexis Hawkins, who lived in another house across the street from Strange, testified that Strange came out of his house with a gun and started shooting at the vehicle occupied by Square, her son, and another woman and that around twelve shots were fired. Officer Chris Taylor was the primary crime scene investigator. Taylor identified photographs and testified that the marks on Johnson's car were possibly caused by bullets. He also identified a bullet hole in the front door of 202 East Birdsong, across the street from Strange's house, and testified that the bullet went through the front door, into the living room, and out a window. He also testified that a bullet entered the house at 200 East Birdsong, went through a bathroom, and then went into a bedroom where it ultimately lodged in and was recovered from a closet door. Taylor testified that the bullets that hit 200 and 202 East Birdsong, based on trajectory, originated from 205 East Birdsong—Strange's house.

12

From this evidence, we find that a rational trier of fact could find beyond a reasonable doubt that Strange used a firearm while threatening Johnson with imminent bodily injury. Therefore, we overrule this point of error.

We affirm the judgment of the trial court.


                                                    Jack Carter
                                                    Justice


Date Submitted:        September 2, 2014
Date Decided:          September 18, 2014

Publish

13