# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00424-CR

**The State of Texas, Appellant**

**v.**

**Cynthia Redd, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY**
**NOS. C-1-CR-12-152803 & C-1-CR-12-152804**
**HONORABLE JON N. WISSER, JUDGE PRESIDING**

## NO. 03-13-00425-CR

**The State of Texas, Appellant**

**v.**

**Milenko Bozanic, Appellee**

**FROM THE COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY**
**NOS. C-1-CR-12-152805 & C-1-CR-12-152806**
**HONORABLE JON N. WISSER, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Following the seizure of alleged contraband pursuant to a search warrant, the State arrested and charged appellee Cynthia Redd with the misdemeanor offenses of possession of a dangerous drug and gambling promotion and appellee Milenko Bozanic with the misdemeanor

offenses of gambling promotion and keeping a gambling place.[1] Redd and Bozanic each filed largely identical motions to suppress, contending that the search warrant was invalid because, among other reasons, it failed to contain a description of the property to be seized. Following a hearing, the trial court granted the motions to suppress. In three related points of error on appeal, the State asserts that the trial court abused its discretion in suppressing the evidence. We will reverse the trial court's suppression order in each cause.

## BACKGROUND

The sole witness to testify at the suppression hearing was Deputy Jessica Hollis of the Travis County Sheriff's Office, who had drafted both the search warrant and the probable-cause affidavit that supported it. The affidavit included a description of the premises to be searched and a detailed list of the items to be seized. The items to be seized were listed as follows:

1)      Video electronic gambling devices, as defined in Texas Penal Code 47.01(4),[2]

---

[1]  *See* Tex. Health & Safety Code § 483.041; Tex. Penal Code §§ 47.03, .04.

[2]  Later in the affidavit, Hollis elaborated that:

Gambling devices means any electronic, electromechanical or mechanical contrivances that for consideration affords a player an opportunity to obtain anything of value, the award of which is determined solely or partially by chance, even though accompanied by some skill, whether or not the prize is automatically paid by the contrivance.

This includes but is not limited to, gambling versions of bingo, keno, blackjack, lottery, roulette, video poker, or similar electronic, electromechanical, or mechanical games, or facsimiles thereof, that operate by chance or partially so, that a result of the play or operation of the game awards credits or free games, and that record the number of free games or credits so awarded and the cancellation or removal of the free games or credits.

2)      Gambling paraphernalia as defined in Texas Penal Code Section 47.01(6),[3]

3)      Any and all business records and documentation pertaining to the illegal gambling business,

4)      U.S. currency used for or derived from the operation of the illegal gambling business,

5)      Any video or audio recordings, whether made digitally or on film, of the interior or exterior of the illegal gambling business,

6)      Computers, including any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions; data storage facilities such as magnetic tape, hard disk, floppy disk or drum, cd rom or scanner; communications facilities directly relating to or operating in conjunction with such device; devices for printing records of data; and such records or data produced in various forms; manuals, documents, or instructional material relating to such devices and printers,

7)      Computers, personal computers, computer peripherals, modems, computer printers, floppy disk drives, hard disk drivers, diskettes, tapes, computer printouts, computer software, computer programs and applications, computer manuals, system documentation, electronic communication stored in computers as e-mail,

---

Said devices are known as electronic slot machines, multi- or 8-liners, specialty gambling devices or any facsimiles thereof.  These devices are activated by placing US currency in the devices, receiving credits as to the amount of US currency put into the device with each credit worth 5 cents US currency, placing a bet of at least one credit and pushing the start button.

This language encompasses and somewhat expands upon the Penal Code's definition of "gambling device." *See* Tex. Penal Code § 47.01(4).

[3]  Hollis elaborated that:

Gambling paraphernalia is defined as any book, instrument or apparatus by means of which bets have been or may be recorded or registered; any record, ticket, certificate bill, slip, token, writing, scratch sheet, or other means of carrying on bookmaking, wagering pools, lotteries, numbers, policy, or similar games.

This language tracks the Penal Code definition of "gambling paraphernalia." *See id*. § 47.01(6).

8)	Such information, communications may be in the form of electronic communications (such as e-mail) residing on any media (e.g., magnetic or optical media). These communications related to this case stored in any computer, used in the operation of the illegal gambling place or any illegal gambling device, in electronic devices as email,

9)	Any and all information and or data stored on the computer's storage devices, including any electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions; data storage facilities such as magnetic tape, hard disk, floppy disk or drum, cd rom disks of the computer systems described above that could include information related to the operation of an illegal gambling place or illegal gambling device and,

10)	Printed copies of the electronic communications between the operator of the illegal gambling place and coconspirators.

The affidavit also recounted in detail the investigation that, according to Hollis, had led officers to believe that Redd and Bozanic were engaged in illegal activity.

The search warrant itself included a description of the premises to be searched but otherwise did not include any of the above information. Instead, the warrant incorporated the affidavit by reference as follows:

WHEREAS, THE Affiant whose name appears on the attached Affidavit is a Peace Officer under the laws of Texas and did heretofore this day subscribe and swear to said Affidavit before me (which said Affidavit is here now made part hereof for all purposes), and whereas I find that the verified facts stated by Affiant in said Affidavit show that Affiant has probable cause for the belief expressed therein and establish existence of proper grounds issuance of this Warrant; now, therefore, you are commanded to enter the suspected place . . . .

[Address and photo of premises to be searched]

Further, you are ORDERED, pursuant to the provisions of Article 18.10, Texas Code of Criminal Procedure, to retain custody of any property seized pursuant to this Warrant, . . . You are further ORDERED to give notice to this Court, as part of the

4

inventory to be filed subsequent to the execution of this Warrant . . . of the place where the property seized hereunder is kept, stored, and held.

Hollis testified that she presented both the affidavit and the warrant to the magistrate for his signature and that the magistrate signed the warrant. Hollis further testified that she had participated in the execution of the search warrant, along with several other officers and a SWAT unit. According to Hollis, she and the sergeant who directed the SWAT unit were in possession of both the warrant and the affidavit when they executed the search. However, when Hollis encountered Redd on the premises, she showed her only a copy of the warrant—not the affidavit. Hollis added that Redd "would not accept it. I tried to give it to her and she refused it." Hollis then left a copy of the warrant, again without the affidavit, at the premises for Bozanic, who was not present at the time the search warrant was executed.

At the conclusion of the hearing, counsel for Redd and Bozanic argued that the search warrant, by not including any description of what, if anything, was to be seized, was fundamentally defective and violated the Fourth Amendment. In response, the State, while acknowledging that "the better practice" would have been for the warrant itself to list "all the things to be seized," countered that the warrant was nevertheless valid because it had incorporated "by specific reference the affidavit, which described all the things to be seized." Counsel for Bozanic replied that the defendants were not provided with a copy of the affidavit and thus could not know what items the affidavit authorized the officers to seize.

The trial court took the matter under advisement. Subsequently, the trial court granted the motions to suppress. The basis for the trial court's ruling, as specified in its written

5

suppression order in each cause, was the following conclusion of law: "The search warrant did not contain a description of the property that the deputies seized pursuant to the warrant. The language referring to the affidavit being made part of the warrant is not legally sufficient."[4] This appeal by the State in each cause followed.[5]

## STANDARD OF REVIEW

In reviewing a trial court's ruling on a motion to suppress, "an appellate court must apply a standard of abuse of discretion and overturn the trial court's ruling only if it is outside the zone of reasonable disagreement."[6] "The appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations."[7]

---

[4] Another issue during the suppression hearing was whether the warrant referred to an incorrect address in describing the premises to be searched. The trial court found that the address contained within the warrant was incorrect, but the court also concluded that this was not a "fatal defect." The trial court explained in its suppression order: "Though there was a variance in the address of the property, all the other descriptions and photos of the property sought to be searched [were] correct. The warrant authorized the deputies to search the property that the Court authorized to be searched."

[5] We note that only Redd has filed an appellee's brief. Therefore, we will refer only to Redd when discussing the arguments raised on appeal.

[6] *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)).

[7] *Id*. at 922-23 (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).

6

In this case, we review de novo the trial court's application of the law of search and seizure to the facts.[8]

## ANALYSIS

In three points of error, the State asserts that the trial court abused its discretion in suppressing the evidence whether under the United States Constitution, the Texas Constitution, or the Texas Code of Criminal Procedure.[9] Because Redd and Bozanic limited their arguments at the suppression hearing to the requirements of the Fourth Amendment and made no claim that Texas law provides greater protection from unlawful searches and seizures, the parties have confined their analysis to the Fourth Amendment standards. We shall do the same.[10]

"The Fourth Amendment to the United States Constitution mandates that 'no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.'"[11] "The particularity requirement is related to the probable cause requirement in that it enables the magistrate to determine whether probable cause exists for the requested search."[12] "The requirement that warrants shall

---

[8] *See Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010); *Thompson v. State*, 408 S.W.3d 614, 621 (Tex. App.—Austin 2013, no pet.).

[9] *See* U.S. Const. amend. IV; Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 38.23.

[10] *See Flores v. State*, 319 S.W.3d 697, 702 n.8 (Tex. Crim. App. 2010) (resolving case "under the Fourth Amendment only" when appellant "never argued that Article I, § 9 [of the Texas Constitution] provides more protection than the Fourth Amendment").

[11] *Bonds v. State*, 403 S.W.3d 867, 872-73 (Tex. Crim. App. 2013) (quoting U.S. Const. amend. IV); *see also* Tex. Const. art. I, § 9; Tex. Code Crim. Proc. art. 18.04(2).

[12] *Bonds*, 403 S.W.3d at 875.

particularly describe the things to be seized makes general searches under them impossible and prevents the seizure of one thing under a warrant describing another."[13]  Moreover, "[i]n addition to the prevention of general searches, the Fourth Amendment's particularity requirement 'assures the individual whose property is searched or seized of the lawful authority of the executing officer, his need to search, and the limits of his powers to search.'"[14]  "When investigators fail to limit themselves to the particulars in the warrant, both the particularity requirement and the probable cause requirement are drained of all significance as restraining mechanisms, and the warrant limitation becomes a practical nullity.  Obedience to the particularity requirement both in drafting and executing a search warrant is therefore essential to protect against the centuries-old fear of general searches and seizures."[15]

However, Texas courts have repeatedly held that a warrant that fails to particularly describe the items to be seized is not necessarily invalid.  So long as the warrant incorporates by reference a sufficiently specific affidavit, the affidavit becomes a part of the warrant, and the affidavit can then supply the particularity necessary to satisfy the Fourth Amendment.[16]  Moreover,

---

[13] *Stanford v. Texas*, 379 U.S. 476, 485 (1965) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).

[14] *Bonds*, 403 S.W.3d at 874 (quoting *Long v. State*, 132 S.W.3d 443, 447 (Tex. Crim. App. 2004)).

[15] *Long*, 132 S.W.3d at 447-48 (quoting *United States v. Heldt*, 668 F.2d 1238, 1257 (D.C. Cir. 1981)).

[16] *See, e.g.*, *id*. at 447 n.11; *Green v. State*, 799 S.W.2d 756, 760 (Tex. Crim. App. 1990); *Faulkner v. State*, 537 S.W.2d 742, 744 (Tex. Crim. App. 1976); *Phenix v. State*, 488 S.W.2d 759, 764 (Tex. Crim. App. 1972); *Strange v. State*, 446 S.W.3d 567, 570-73 (Tex. App.—Texarkana 2014, no pet.); *Greene v. State*, 358 S.W.3d 752, 756-59 (Tex. App.—Fort Worth 2011, pet. ref'd); *Proctor v. State*, 356 S.W.3d 681, 687 (Tex. App.—Eastland 2011, pet. ref'd); *Ramirez v. State*,

8

when construing the language contained within affidavits and search warrants, courts "must do so in a common sense and realistic fashion and avoid hypertechnical analysis."[17]

Redd argues on appeal, as she did below, that the warrant in this case was invalid because it failed to expressly authorize the officers to seize *anything*. According to Redd, "The warrant . . . could have said, 'You are ordered to seize gambling devices, business records, currency, and computers, as particularly described in the attached affidavit.' Or it could have said, 'You are ordered to seize items 1 through 10, as described in the attached affidavit.' Or perhaps it could have said, 'You are hereby ordered to seize anything and everything described in the attached affidavit.' But it did not." In other words, in Redd's view, the warrant was invalid because it failed to expressly specify what, if any, items contained within the affidavit the officers were authorized to seize.

As support for her argument, Redd relies on *Groh v. Ramirez*, in which the United States Supreme Court held a search warrant to be invalid because it "did not describe the items to be seized at all."[18] However, the warrant in *Groh* is distinguishable from the warrant at issue here. The warrant in *Groh* "did not incorporate other documents by reference," including "the itemized list contained in the application."[19] In contrast, the warrant in this case incorporated the

---

345 S.W.3d 631, 633-35 (Tex. App.—San Antonio 2011, no pet.); *Arrick v. State*, 107 S.W.3d 710, 714 (Tex. App.—Austin 2003, pet. ref'd).

[17] *Faulkner*, 537 S.W.2d at 744 (citing *United States v. Ventresca*, 380 U.S. 102, 108 (1965); *Powell v. State*, 505 S.W.2d 585, 585 (Tex. Crim. App. 1974)); *Strange*, 446 S.W.3d at 571.

[18] 540 U.S. 551, 558 (2004).

[19] *Id*. at 554-55, 558. The Supreme Court observed that "most Courts of Appeals have held that a court may construe a warrant with reference to a supporting application or affidavit if the warrant uses appropriate words of incorporation, and if the supporting document accompanies the warrant." *Id*. at 557-58 (citing *United States v. McGrew*, 122 F.3d 847, 849-850 (9th Cir. 1997);

affidavit by reference "for all purposes," and one of those purposes, as indicated in the affidavit, was

the seizure of property that was specifically described therein. After describing the premises to be

searched, the affidavit expressly stated:

> There is, at said suspected place and premises, property and items constituting implements, instruments, instrumentalities, and evidence used in the commission of an offense, and tending to connect the business owner and operators with the commission of the offenses of Gambling Promotion, Keeping a Gambling Place, Possession of a Gambling Device, Equipment, or Paraphernalia, and *subject to seizure* under the laws of Texas and described as follows . . . .

(emphasis added). The affidavit then went on to identify, as previously described, the items of

property to be seized, requested authority "to search for and seize" those items, and concluded with

a request that "a warrant be issued authorizing any peace officer . . . to enter [the described

premises], with the authority to search for and seize any" of the items described in the affidavit.

Additionally, the warrant itself made express reference to the seizure of property, providing that the

officers were to "retain custody of any property seized pursuant to this Warrant" and to notify the

magistrate of "where the property seized hereunder is kept, stored, and held." If the warrant did not

authorize the seizure of property, as Redd contends, such language would be rendered meaningless.

Reading the warrant and the affidavit together, in a "common sense and realistic fashion" as we

are required to do, we conclude that the language in the warrant was legally sufficient under the

---

*United States v. Williamson*, 1 F.3d 1134, 1136, n. 1 (10th Cir. 1993); *United States v. Blakeney*, 942 F.2d 1001, 1025-1026 (6th Cir. 1991); *United States v. Maxwell*, 920 F.2d 1028, 1031 (D.C. Cir. 1990); *United States v. Curry*, 911 F.2d 72, 76-77 (8th Cir. 1990); *United States v. Roche*, 614 F.2d 6, 8 (1st Cir. 1980)). Because the warrant in *Groh* failed to refer to the supporting affidavit in any manner, the Supreme Court did not "further explore the matter of incorporation." *Id*. at 558.

Fourth Amendment to authorize the seizure of the property described within the affidavit, and the trial court abused its discretion in concluding otherwise.[20]

As for Redd's contention that the warrant failed to provide her and Bozanic with notice of what was to be seized, because the officers failed to provide them with a copy of the affidavit on which the warrant was based, Texas courts have repeatedly rejected this argument as a basis for suppressing evidence seized pursuant to an otherwise valid search warrant, absent a showing of harm, i.e., a showing that the wrong property was seized or that the search somehow exceeded the scope of what was authorized by the warrant.[21] Here, Redd and Bozanic presented no

[20] *See State v. Powell*, 306 S.W.3d 761, 768 (Tex. Crim. App. 2010) (concluding that trial court abused its discretion in granting motion to suppress when it failed to consider everything "described in the affidavit" in determining scope of warrant); *Faulkner*, 537 S.W.2d at 744 (holding that "common sense" reading of warrant demonstrated that warrant was "ordering the seizure of the contraband which formed the basis of the affidavit"); *Ramirez*, 345 S.W.3d at 633 ("[I]f the description in the affidavit is compliant with the constitutional and statutory requirements regarding particularity of the description of the place or person to be searched and the items to be seized, the warrant itself is valid even if standing alone it would not meet those requirements."); *Arrick*, 107 S.W.3d at 714 ("When the search warrants and supporting affidavits are read in a common-sense manner, it is clear that the warrants ordered the seizure of the evidence described in the affidavits."); *see also State v. Acosta*, 99 S.W.3d 301, 303-05 (Tex. App.—Corpus Christi 2003, pet. ref'd) (concluding that trial court abused its discretion in granting motion to suppress when it construed warrant based on language contained within warrant's "title alone, without looking to the substance of the warrant"); *State v. Saldivar*, 798 S.W.2d 872, 874 (Tex. App.—Austin 1990, pet. ref'd) (concluding that trial court abused its discretion in granting motion to suppress when defendant's theory limiting search to particular buildings expressly mentioned in warrant would "result[] in an absurdity" that would render "the basic tenor of the document as a whole . . . meaningless").

[21] *See, e.g.*, *Greene*, 358 S.W.3d at 756-58; *Proctor*, 356 S.W.3d at 687; *Ramirez*, 345 S.W.3d at 634-35; *State v. Tipton*, 941 S.W.2d 152, 155-56 (Tex. App.—Corpus Christi 1996, pet. ref'd); *Turner v. State*, 886 S.W.2d 859, 864 (Tex. App.—Beaumont 1994, pet. ref'd); *Green v. State*, 880 S.W.2d 198, 201 (Tex. App.—Texarkana 1994, no pet.); *Gonzales v. State*, 743 S.W.2d 718, 719 (Tex. App.—Houston [14th Dist.] 1987, pet. ref'd); *Robles v. State*, 711 S.W.2d 752, 753 (Tex. App.—San Antonio 1986, pet. ref'd). Although most federal appeals courts have held that the affidavit must accompany the warrant in order for the warrant to be valid, *see supra* n.19, at least two federal appeals courts have held otherwise. *See United States v. Hurwitz*, 459 F.3d 463, 472-73

11

evidence at the suppression hearing of any harm. Thus, to the extent the trial court might have concluded that the warrant was invalid because Redd and Bozanic were not given a copy of the underlying affidavit, that conclusion would also constitute an abuse of discretion.

Finally, we observe that Texas law, as it applies to this case, does not provide any greater protection than the Fourth Amendment from unreasonable searches and seizures.[22] Accordingly, to the extent the trial court might have based its conclusion that the warrant was invalid under the Texas Constitution or the Texas Code of Criminal Procedure, that would also constitute an abuse of discretion.

On this record, there is no basis for suppressing the evidence seized pursuant to the search warrant. Consequently, we must conclude that the trial court abused its discretion in granting the motion to suppress in each cause. We sustain the State's points of error.

---

(4th Cir. 2006) (holding that there is no "constitutional mandate that an executing officer possess or exhibit the affidavit or any other document incorporated into the warrant at the time of the search in order for the warrant to be valid"); *Baranski v. Fifteen Unknown BATF Agents*, 452 F.3d 433, 443 (6th Cir. 2006) ("While the decision of officers not to present an incorporated affidavit to the occupant upon request may be a relevant factor in determining the reasonableness of a search, it does not make a warrant-supported search a warrantless one."); *see also United States v. Silva*, No. SA-09-CR-203-XR, 2009 U.S. Dist. LEXIS 47873, at *13-14 (W.D. Tex. June 8, 2009) (order) (following *Hurwitz* and *Baranski*). At any rate, we are not bound by the decisions of federal circuit courts when interpreting the United States Constitution. *See Ex parte Evans*, 338 S.W.3d 545, 552 n.27 (Tex. Crim. App. 2011); *Soria v. State*, 933 S.W.2d 46, 56 n.14 (Tex. Crim. App. 1996).

[22] *See Hulit v. State*, 982 S.W.2d 431, 436 (Tex. Crim. App. 1998); *Hughes v. State*, 334 S.W.3d 379, 383-84 (Tex. App.—Amarillo 2011, no pet.); *Franks v. State*, 241 S.W.3d 135, 141 (Tex. App.—Austin 2007, pet. ref'd); *see also Johnson v. State*, 912 S.W.2d 227, 233-34 (Tex. Crim. App. 1995) ("[F]ramers of the Texas Constitution chose to draft Art. I, § 9 to protect Texas citizens from unreasonable searches and seizures by the state in the same way they were protected from unreasonable searches and seizures by the federal government.").

**CONCLUSION**

We reverse the trial court's suppression order in each cause and remand the causes to the trial court for further proceedings consistent with this opinion.

_____

Bob Pemberton, Justice

Before Justices Pemberton, Field, and Bourland

Reversed and Remanded

Filed:   December 16, 2015

Do Not Publish

13