# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00077-CR

**Tallion Kyle Taylor, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 368TH DISTRICT COURT OF WILLIAMSON COUNTY
### NO. 15-2925-K368, THE HONORABLE LLOYD DOUGLAS SHAVER, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Tallion Kyle Taylor of three counts of possession of child pornography. *See* Tex. Penal Code § 43.26(a). In six points of error, appellant complains about the indictment and search warrants in this case, challenges the sufficiency of the evidence to sustain his convictions, and argues that he was deprived of his right to present a full defense and improperly denied a jury instruction on the lesser-included offense of attempted possession of child pornography. For the following reasons, we affirm the judgments of conviction.

## BACKGROUND

After appellant's ex-wife reported to the police that appellant had threatened, via a cell phone text message, to disclose an intimate photograph of her, *see* Tex. Penal Code § 21.16(c) (providing that person commits offense if "person intentionally threatens to disclose, without the consent of the depicted person, visual material depicting another person with the

person's intimate parts exposed" and "actor makes the threat to obtain a benefit"), the police obtained an evidentiary search warrant and seized appellant's cell phone in December 2015. After eight digital images that police believed to be child pornography were discovered on the cell phone, the police obtained subsequent search warrants to search appellant's home and vehicle. Pursuant to the warrants, the police seized additional electronic devices belonging to appellant, including a laptop, a USB drive, and SD cards from his home and vehicle. The police discovered over 300 digital images on the seized electronic devices that they believed were child pornography. Appellant, who was an attorney, was arrested and charged by indictment with ten counts of possession of child pornography. *See id.* § 43.26(a) (prohibiting possession of "visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct").

During the pendency of the case, appellant brought two separate appeals from the trial court's orders denying his pretrial applications for writ of habeas corpus. *See Ex parte Taylor*, No. 03-18-00481-CR, 2018 Tex. App. LEXIS 9252 (Tex. App.—Austin Nov. 14, 2018, no pet.) (mem. op., not designated for publication); *Ex parte Taylor*, No. 03-16-00689-CR, 2017 Tex. App. LEXIS 10008 (Tex. App.—Austin Oct. 26, 2017, pet. ref'd) (mem. op., not designated for publication). Appellant sought habeas relief on the ground that section 21.16(c) of the Texas Penal Code, "the revenge porn statute," was facially unconstitutional and, therefore, that the initial search warrant to seize his phone was invalid because it was based on that section. *See* 2018 Tex. App. LEXIS 9252, at *9; 2017 Tex. App. LEXIS 10008, at *6. In both appeals, we concluded that appellant's claim was not cognizable on a pretrial application for writ of habeas corpus and affirmed the trial court's order denying habeas relief. *See* 2018 Tex. App. LEXIS 9252, at *16–18; 2017 Tex. App. LEXIS 10008, at *11–12.

2

The State's case against appellant proceeded to a jury trial in December 2018. The State's witnesses were a sergeant and a detective, who testified about their respective roles in pursuing and investigating the case against appellant; appellant's former secretary, who testified about appellant's law firm and office; and a pediatrician, who testified about the stages of maturation of females generally and her opinions as to the maturation of the female children depicted in the images that the police found on appellant's electronic devices. The evidence showed that the pornographic images on appellant's electronic devices had been deleted but that the police found them through forensic examination. The evidence showed that an image that is deleted from a phone or other electronic device does not cease to exist but its status changes from allocated to unallocated and that it continues to exist in unallocated space until it has been overwritten. The evidence also showed that the collection of images across all the seized devices was of underage girls who were around the same age and race, including multiple series of images of the same girl in different poses.

As to the eight pornographic images on appellant's cell phone, the detective testified that they were uploaded to appellant's phone with over 500 other photos within a "three-minute span" around 5:00 a.m. on September 11, 2015, and that the other photos in this upload were of appellant's family and selfies of appellant. The detective found the pornographic images in the "thumbnail gallery" of photos on the phone, explaining that the images had been saved to the phone and then deleted.[1] The detective further testified that he found one image of child pornography and documents from legal proceedings connected to appellant on the SD card that was seized from appellant's vehicle, "over 200 images" of child pornography on the USB

_____

[1] The detective explained that a thumbnail image is a smaller version of the actual photo that "kind of presents it in a gallery format" and is created when the actual photo is downloaded to the phone.

drive that was seized from his home, and thirty-three images of child pornography on the SD card that was seized from his home.

The sergeant testified about his investigation of appellant, including interviews of appellant, the search warrants, and the seizure of appellant's electronic devices. When the sergeant showed appellant one of the pornographic images recovered from appellant's cell phone, appellant's "exact words were, 'Oh shit,'" and appellant agreed that the two girls in the image "definitely appeared to be underage." Appellant, however, denied knowing how the images got on his phone and changed his explanation over time, providing various possibilities to the sergeant for how they might have gotten on it, including that AT&T transferred them to the phone at the time he purchased the phone, which was on September 4, 2015 (seven days before the images were uploaded); that the images were from an SD card that he purchased on Craigslist; or that his ex-wife or a client put the images on his phone. He also initially denied that he had a computer at his home, but after the police seized his laptop, which was a MacBook, he admitted that it belonged to him and provided the password.

Appellant's former secretary testified that appellant, his former law partner Felix Rippy, and the secretary worked at the law office until it closed in November 2015. Rippy and appellant were friends and law partners who spent a lot of time together prior to the firm closing. Although her testimony was at times inconsistent, the secretary testified that: (i) appellant told her that he destroyed a client's computer in April 2015 after the client raised concerns about searches for child pornography on the computer, (ii) appellant took his laptop back and forth from his home, (iii) Rippy had his own computer, (iv) she never saw Rippy or anyone but appellant use appellant's laptop, (v) she did not know the password for appellant's laptop, and (vi) appellant used USB drives on his own. The secretary also testified that, when

4

she gave grand jury testimony in March 2016, she was talking to Rippy almost every day and, as far as she knew, appellant and Rippy were no longer in contact; that Rippy moved out of state shortly after the law office closed in November 2015; that remaining items from the office were moved to appellant's home, including Rippy's furniture; and that Rippy did not help pack up the office because he "had pretty much taken care of his stuff."

The State's exhibits included the pornographic images that were found on appellant's electronic devices, audio recordings of the interviews with appellant, a quarantine log from appellant's laptop,[2] and a report from the National Center for Missing and Exploited Children (NCMEC) confirming that certain images found on the electronic devices were child pornography of known victims.[3] Although the police did not find images of child pornography on appellant's laptop, there was only one user "Tallion K," "[a]ll the internet browsing history had been deleted," and the quarantine log documented events with the user name "Tallion K" of over 1300 downloads from known child pornography websites on ninety-five different days between November 12, 2012, and March 31, 2014. Pornographic images that were found on appellant's other electronic devices corresponded to the child pornography websites in the quarantine log.[4]

---

[2] The detective explained that the computer creates a quarantine log to protect itself when something that is potentially harmful to the computer is downloaded.

[3] The sergeant testified that the NCMEC confirms if the images are "confirmed images of child victims through police agencies" by saying "'this victim was investigated by our agency, and we confirm she is underage.'"

[4] For example, pornographic images found on the SD cards and the USB drive contained metadata that showed that the images were from the websites "jailbaits.in" and "xbbs.asia," which were websites that were in the quarantine log from appellant's laptop. The detective testified that these websites are "places where people download child pornography." The

5

Referencing the State's exhibit containing the pornographic images found on appellant's electronic devices, the detective and the pediatrician testified about their opinions that the females in the images were underage. The detective explained the unique number assigned to each image in the exhibit for identification purposes[5]; testified that the images appeared to be of underage girls; and referenced the unique number for particular images and testified about those images, including that a particular image from the SD card found in appellant's home was a lewd exhibition of a female child's breast and that it was confirmed by NCMEC to be child pornography. He also testified that the image from the SD card found in appellant's vehicle was a lewd exhibition of the female genitals, that the female in the image appeared to be "well under the age of 18 with her legs spread open and the vagina being displayed," and that he saw over 200 similar images on appellant's electronic devices to the ones he specifically testified about. The pediatrician similarly testified about particular images with reference to their unique number in the exhibit, including an image of sexual intercourse involving a prepubescent girl, and explained that she reviewed over 200 images and that most of the images were of females in stages II and III of maturation. According to the pediatrician, there are five stages of maturation from stage I, prepubescent, to stage V, full adult maturation.

The defense's theories at trial included that appellant was unaware of the pornographic images on the electronic devices and that someone else—particularly, appellant's

---

metadata of a sampling of several images on the SD cards also showed that they were downloaded using a "Safari" browser on an Apple operating system.

[5] The detective explained that the four files in the State's exhibit containing the images from appellant's electronic devices were grouped by the four electronic devices in which pornographic images were found—the cell phone, the USB drive, and the two SD cards—and each image had a unique number. For example, the images from appellant's cell phone were in the file labeled "LG-H810 CP slideshow" and began with the letter "D" and then a number.

former law partner Rippy—was responsible for the images being on the devices. The defense's witnesses were an attorney who participated in an informal settlement conference at appellant's law office in February 2015; a potential client, who visited the law office on April 5, 2013, at noon to pick up paperwork; a digital forensic investigator, who did an acquisition of appellant's cell phone; and the detective. The attorney testified that, on the day of the informal settlement conference, there was a MacBook in the conference room and that Rippy used it. The potential client testified that, when she arrived at the office to pick up her paperwork at noon on April 5, 2013, only Rippy was there and he was in appellant's office using a computer. The investigator testified that the State's version of what happened concerning the pornographic images on the cell phone was possible but that, under its version, he would have expected the actual images to be in the phone's "unallocated space" and not only in the thumbnail gallery because of the amount of storage space available. He also testified that images do not have to be downloaded for a thumbnail of the image to be made and that placing an SD card with child pornography images into the cell phone could have created thumbnail images without saving the images. The detective confirmed that the quarantine log for April 5, 2013—the day the potential client saw Rippy in appellant's office around noon using a computer—showed "21 quarantine events starting at 10:05 a.m. and ending at 11:52 a.m."

The jury found appellant not guilty of seven counts[6] and guilty of three counts—Counts 3 (photograph depicting lewd exhibition of the female genitals), 7 (photograph depicting

---

[6] Appellant was found not guilty of the following counts: Count 1 (photograph depicting actual sexual intercourse), Count 2 (photograph depicting actual sexual intercourse), Count 4 (photograph depicting lewd exhibition of the anus), Count 5 (photograph depicting actual deviate sexual intercourse), Count 6 (photograph depicting actual deviate sexual intercourse), Count 8 (photograph depicting actual deviate sexual intercourse), and Count 9 (photograph depicting lewd exhibition of the female genitals).

7

actual or simulated sexual intercourse or deviate sexual intercourse), and 10 (photograph depicting lewd exhibition of the female breast below the top of the areola). *See* Tex. Penal Code § 43.26(a); *see also id.* § 43.25(a)(2) (defining "sexual conduct"). After hearing additional evidence during the punishment phase of trial, the jury assessed appellant's sentence at 10 years' confinement and a fine of $10,000 for Count 3; 10 years' confinement and a fine of $5,000 for Count 7; and 10 years' confinement and a fine of $10,000 for Count 10. The jury also recommended community supervision "of both the prison time and the fine" for Counts 3 and 10 and of the prison time only for Count 7. In accordance with the jury's verdicts, the trial court thereafter signed judgments of conviction and suspended imposition of the sentences and fines, except as to Count 7's fine of $5,000. This appeal followed.

## ANALYSIS

### Indictment

In his first point of error, appellant argues that the indictment did not give him specific notice of the charges against him, "resulting in a constitutional violation which requires automatic reversal." Appellant complains about the State's failure to identify in the indictment which specific images of child pornography that it sought to prove at trial and the trial court's denial of his motion to quash the indictment, which was based on the same ground—the State's failure to identify the specific images of child pornography in the indictment. The trial court denied the motion to quash on October 19, 2016.

In criminal prosecutions, the accused has the constitutional right "to be informed of the nature and cause of the accusation." U.S. Const. amend. VI; *see* Tex. Const. art. I, § 10 (providing that accused in criminal prosecution "shall have the right to demand the nature and

8

cause of the accusation against him, and to have a copy thereof"). An indictment "must be specific enough to inform the accused of the nature of the accusation against him so that he may prepare a defense." *State v. Moff*, 154 S.W.3d 599, 601 (Tex. Crim. App. 2004); *see also* Tex. Code Crim. Proc. arts. 21.02 (listing requisites of indictment), .03 ("Everything should be stated in an indictment which is necessary to be proved."), .04 (stating that certainty "required in an indictment is such as will enable the accused to plead the judgment that may be given upon it in bar of any prosecution for the same offense"), .11 ("An indictment shall be deemed sufficient which charges the commission of the offense in ordinary and concise language in such a manner as to enable a person of common understanding to know what is meant, and with that degree of certainty that will give the defendant notice of the particular offense with which he is charged, and enable the court, on conviction, to pronounce the proper judgment. . . .").

The question of whether an indictment provides sufficient notice of a charged offense is a question of law. *Hughitt v. State*, 583 S.W.3d 623, 626 (Tex. Crim. App. 2019) (citing *Moff*, 154 S.W.3d at 601). We therefore review de novo the trial court's denial of a motion to quash that challenges the sufficiency of the evidence. *Id.*; *Smith v. State*, 309 S.W.3d 10, 13–14 (Tex. Crim. App. 2010). Further, when analyzing whether a charging instrument provided adequate notice, we engage in a two-step analysis: (1) we identify the elements of the offense; and (2) "whether the statutory language is sufficiently descriptive of the charged offense." *State v. Zuniga*, 512 S.W.3d 902, 907 (Tex. Crim. App. 2017). "Generally, an indictment that tracks the language of the applicable statute will satisfy constitutional and statutory requirements." *Hughitt*, 583 S.W.3d at 626 (citing *State v. Mays*, 967 S.W.2d 404, 406 (Tex. Crim. App. 1998)); *see Moff*, 154 S.W.3d at 602 (explaining that ordinarily, indictment is legally sufficient if it tracks statutory language when "act constituting the offense is defined so that the accused is

9

informed of the nature of the charge"). "The State need not allege facts that are merely evidentiary in nature." *Smith*, 309 S.W.3d at 14 (quoting *Mays*, 967 S.W.2d at 406).

Appellant argues that by failing to identify particular images, the indictment did not give him sufficient notice of the charges against him, requiring him "to defend against over 300 images, rather than ten as alleged in the indictment, resulting in a constitutional violation." He maintains that he brought this problem to the trial court's attention during the motion to quash by relating that "many of the individuals in the images did not appear to be children." The indictment, however, tracked the statutory language for the offense of possession of child pornography and identified the specific "sexual conduct" for each count that the child was alleged to have been engaging at the time of the image. *See* Tex. Penal Code § 43.26(b) (defining "sexual conduct" to have meaning assigned by section 43.25). For example, the State tracked the statutory language of the offense of possession of child pornography in Count 3 and alleged that the child in the visual material was engaging in lewd exhibition of the female genitals:

> And it is further presented in and to said Court that the said Tallion Kyle Taylor, in the County of Williamson and State aforesaid, on or about the 8th day of December, 2015, did then and there, intentionally or knowingly, possess visual material, to-wit: a disk, diskette, or other physical medium that allows an image to be displayed on a computer or other video screen or any image transmitted to a computer or other video screen by telephone line, cable, satellite transmission or other method, that visually depicted, and which the defendant knew visually depicted, a child who was younger than 18 years of age at the time the image of the child was made, engaging in sexual conduct, to-wit: lewd exhibition of the female genitals, . . .

*See id.* § 43.26(a), (b)(2) (defining "sexual conduct"), (b)(3) (defining "visual material"); *see also id.* § 43.25(a)(2) (defining "sexual conduct" to include "lewd exhibition of the genitals"). Similarly, Counts 7 and 10 tracked the statutory language: Count 7 alleged that the sexual

10

conduct that the child was engaging was "actual or simulated sexual intercourse or deviate sexual intercourse"; and Count 10 alleged "lewd exhibition of the female breast below the top of the areola." *See id.* § 43.25(a)(2) (defining "sexual conduct" to include "actual or simulated sexual intercourse," "deviate sexual intercourse," and "lewd exhibition of . . . any portion of the female breast below the top of the areola").

We also observe that, when the State rested, appellant did not request that the State elect the specific image on which it was relying as proof for each count. *See Cosio v. State*, 353 S.W.3d 766, 775–76 (Tex. Crim. App. 2011) (observing that defendant's decision to elect or not elect is purely strategic choice made after weighing relevant considerations and that election may be waived); *Phillips v. State*, 193 S.W.3d 904, 909–10 (Tex. Crim. App. 2006) (explaining that before State rests, "trial court has discretion in directing State to make an election" but that "once the State rests its case in chief," trial court must require State to elect "on the timely request of a defendant"); *see also Cruz v. State*, No. 11-17-00008-CR, 2019 WL 386537, at *2–3 (Tex. App.—Eastland Jan. 31, 2019, pet. ref'd) (mem. op., not designated for publication) (overruling appellant's issue challenging trial court's denial of motion to quash indictment on insufficiency ground and observing that appellant did not request State to elect which discrete acts it was going to rely on for his three convictions).

Based on our review of the indictment, we conclude that it provided adequate notice to appellant of the charges against him and that the trial court did not err when it denied appellant's motion to quash the indictment. *See Smith*, 309 S.W.3d at 14 (observing that State "need not allege facts that are merely evidentiary in nature" in charging instrument). We overrule appellant's first point of error.

11

**Search Warrants**

Appellant's second point of error challenges the validity of the search warrants in this case on the ground that section 21.16(c) of the Texas Penal Code—the statute underlying the initial search warrant to seize appellant's cell phone—is unconstitutional. In the probable cause affidavit for the initial search warrant, the officer averred that he believed that appellant had committed the offense of unlawful disclosure or promotion of intimate visual material by threatening to disclose an intimate picture of his ex-wife and that evidence of the crime would be found on appellant's cell phone. *See* Tex. Penal Code § 21.16(c). Appellant argues that his "communications" that were set forth in the probable cause affidavit were "protected free speech," and, therefore, did not constitute a crime to establish probable cause. *See* U.S. Const. amend. I; *see also* Tex. Code Crim. Proc. art. 18.01(b) (requiring "sworn affidavit setting forth substantial facts establishing probable cause").[7]

As support for his challenge to the constitutionality of section 21.16(c), appellant analogizes section 21.16(c) to other provisions of the Texas Penal Code that courts have found to be unconstitutional because they violated the First Amendment. *See Ex parte Lo*, 424 S.W.3d 10, 19–20 (Tex. Crim. App. 2013) (applying First Amendment overbreadth doctrine and concluding that section 33.021(b) of Texas Penal Code, which criminalizes communicating online in sexually explicit manner with minor, was facially unconstitutional because it was overbroad and punished constitutionally protected speech or speech that was already prohibited by other statutes); *Ex parte Jones*, No. 12-17-00346-CR, 2018 Tex. App. LEXIS 3439, at *14–16 (Tex.

---

[7] *See also State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012) ("Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location." (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983); *State v. McLain*, 337 S.W.3d 268, 272 (Tex. Crim. App. 2011))).

12

App.—Tyler May 16, 2018, pet. granted) (mem. op., not designated for publication) (concluding that section 21.16(b), which criminalizes disclosure of visual materials depicting person's intimate parts without consent, was facially unconstitutional in violation of Free Speech clause of First Amendment because it was "an invalid content-based restriction and overbroad in the sense that it violates rights of too many third parties by restricting more speech than the Constitution permits"); *but see Ex parte Lopez*, No. 09-17-00393-CR, 2019 Tex. App. LEXIS 2375, at *11–13 (Tex. App.—Beaumont Mar. 27, 2019, no pet.) (mem. op., not designated for publication) (rejecting challenge based on First Amendment to facial constitutionality of section 21.16(b)).

In the context of this case, however, we need not determine the constitutionality of section 21.16(c) because even if we were to conclude that it is unconstitutional, we would conclude that the good-faith exception to the exclusionary rule applies. *See* Tex. Code Crim. Proc. art. 38.23(b) (providing that evidence may be used that "was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause"); *McClintock v. State*, 541 S.W.3d 63, 72–73 (Tex. Crim. App. 2017) (explaining good-faith exception to exclusionary rule); *Siller v. State*, 572 S.W.3d 339, 344 (Tex. App.—Eastland 2019, no pet.) (applying directives from *McClintock* on remand and concluding that good-faith exception applied to warrant that was based on criminal offense that was declared unconstitutional after search and arrest warrant had been obtained and executed because "objectively reasonable officer preparing the affidavit and executing the warrant in this case would have believed that the warrant was not tainted by an element that would ultimately be declared to be unconstitutional"); *see also Karenev v. State*, 281 S.W.3d 428, 434 (Tex. Crim. App. 2009) ("Statutes are presumed to be constitutional until it is determined otherwise."). In this case, an objectively reasonable law enforcement officer would have been acting in good

faith reliance on the initial search warrant to seize appellant's cell phone. *See* Tex. Code Crim. Proc. art. 38.23(b); *McClintock*, 541 S.W.3d at 72–73; *Siller*, 572 S.W.3d at 344. On this basis, we overrule appellant's second point of error.

**Search of Appellant's Home**

In his third point of error, appellant argues that "the search warrant for his home did not authorize the search of his home." Appellant does not dispute that the probable cause affidavit identified his home with particularity as the place to be searched but argues that the search warrant itself failed to do so, resulting in an unlawful search and seizure in violation of the U.S. and Texas Constitutions and the Texas Code of Criminal Procedure. *See* U.S. Const. amend. IV (requiring description of place to be searched to be "particularly" described in warrant); Tex. Const. art. I, § 9 (requiring description of place to be searched to be "as near as may be" in warrant); Tex. Code Crim. Proc. arts. 1.06 ("No warrant to search any place or to seize any person or thing shall issue without describing them as near as may be, . . . ."), 18.04(2) (requiring search warrant to identify "as near as may be, the person, place, or thing to be searched").

Appellant cites the language in the search warrant that identifies the place to be searched as "the suspected mobile/cellular telephone" to argue that "the search of a cell phone, rather than a residence, is not a simple error in grammar or an ambiguity of any kind." Appellant also relies on the sergeant's testimony during a pretrial hearing on appellant's motion to suppress the evidence that was seized during the search of appellant's home. In his testimony, the sergeant explained that he mistakenly referenced the place to be searched in the warrant. As to the nature of the mistake, the sergeant testified that he "[didn't] know if you can call it a

14

typographical error, but it certainly [was] an error that [he] missed that word in there," and he agreed that a defendant handed the search warrant "wouldn't be on notice of what was being searched."

The search warrant, however, "incorporated herein" the attached affidavit "for all purposes," and appellant does not dispute that the affidavit identified his home with particularity as the place to be searched. "It is well settled when the affidavit is attached to the warrant, these documents should be considered together as defining the place to be searched, but the description in the affidavit controls over language in the warrant itself." *Long v. State*, 132 S.W.3d 443, 446 & n.11 (Tex. Crim. App. 2004) (citing *Riojas v. State*, 530 S.W.2d 298, 303 (Tex. Crim. App. 1975)). Further, a search warrant's incorporation of an affidavit that describes the place to be searched with particularity "would be sufficient to make the description of the place to be searched a part of the warrant itself." *See Phenix v. State*, 488 S.W.2d 759, 764 (Tex. Crim. App. 1972).

Considering the warrant that "incorporated herein" the attached affidavit and the affidavit together, we conclude that the search warrant, despite the mistaken description of the place to be searched, authorized the search of appellant's home. *See id.*; *State v. Saldivar*, 798 S.W.2d 872, 873 (Tex. App.—Austin 1990, no pet.) (explaining that generally "warrant and the attached affidavit should be considered together as defining the place to be searched, but the description in the affidavit controls over the language of the warrant itself"); *see, e.g.*, *Strange v. State*, 446 S.W.3d 567, 572–73 (Tex. App.—Texarkana 2014, no pet.) (determining scope of search warrant by examining warrant and affidavit and concluding that warrant that mistakenly identified "vehicle" as place to be searched authorized search of residence because affidavit that was "incorporated herein" described residence as place to be searched); *Rios v. State*,

901 S.W.2d 704, 706–08 (Tex. App.—San Antonio 1995, no pet.) (finding that discrepancy between affidavit, which described residence as place to be searched, and warrant, which incorporated affidavit but identified "the suspected vehicle" as place to be searched, to be "inadvertent mistake" that did not invalidate search warrant as to residence). We overrule appellant's third point of error.

## Legal Sufficiency of the Evidence

In his fourth point of error, appellant contends that the evidence was insufficient to support his convictions for Counts 3, 7, and 10 because the State failed to prove "intentional or knowing possession of any child pornography images" and "we do not know which images Appellant was convicted of possessing or if the individual(s) in the photograph was under the age of eighteen years."

### Standard of Review

Due process requires that the State prove, beyond a reasonable doubt, every element of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 316–17 (1979); *Lang v. State*, 561 S.W.3d 174, 179 (Tex. Crim. App. 2018). When reviewing the sufficiency of the evidence to support a conviction, we consider all the evidence in the light most favorable to the verdict to determine whether, based on that evidence and the reasonable inferences therefrom, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *Jackson*, 443 U.S. at 319.

16

The trier of fact is the sole judge of the weight and credibility of the evidence. *See Zuniga v. State*, 551 S.W.3d 729, 733 (Tex. Crim. App. 2018); *Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016); *see also* Tex. Code Crim. Proc. art 36.13 (stating that "the jury is the exclusive judge of the facts"). When the record supports conflicting reasonable inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that resolution. *Zuniga*, 551 S.W.3d at 733; *Cary v. State*, 507 S.W.3d 750, 757 (Tex. Crim. App. 2016) (citing *Jackson*, 443 U.S. at 326).

"For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012); *see Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) (explaining that "State's burden does not require it to disprove every conceivable alternative to a defendant's guilt"). Further, "[i]t is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

Our standard of review is the same for direct and circumstantial evidence cases. *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Hooper*, 214 S.W.3d at 13); *Wise*, 364 S.W.3d at 903. We must "determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict." *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

17

**Possession of Child Pornography**

A person commits the offense of possession of child pornography if the person "knowingly or intentionally possesses . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct" and "the person knows that the material depicts the child" in this manner. Tex. Penal Code § 43.26(a). "'Possession' means actual care, custody, control, or management," *id.* § 1.07(a)(39), and "sexual conduct" includes "actual or simulated sexual intercourse, deviate sexual intercourse," and "lewd exhibition of the genitals . . . or any portion of the female breast below the top of the areola," *id.* § 43.25(a)(2); *see id.* § 43.26(b)(2) (defining "sexual conduct" to have meaning assigned by section 43.25). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." *Id.* § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist." *Id.* § 6.03(b).

Appellant argues that the evidence was legally insufficient to support his convictions based on the State's failure to identify which images on the State's exhibit "it was submitting to the jury to prove its case" and the pediatrician's testimony that she could not determine the age of a person based on a picture "but could only determine what state of maturation they were in." Appellant also cites the sergeant's testimony that he did not know who put the images on the electronic storage devices, when they were put on and deleted from those devices, or if appellant viewed the images to argue that the State failed to prove "intentional or knowing possession of any child pornography images." The sergeant admitted

18

that it was possible for someone to possess the storage devices in this case and be unaware that there was child pornography on them.

As the Texas Court of Criminal Appeals has observed, there are "difficulties of establishing criminal intent in the possession of computer pornography" and "peculiarities of determining knowing or intentional possession of computer pornography." *Wise*, 364 S.W.3d at 903–05; *see id.* (discussing two approaches to framing sufficiency analysis in cases involving child-pornography images discovered in computer's cache or free space). Types of evidence that courts have found to be sufficient to support a jury's determination that a defendant had knowledge of child pornography on his computer include evidence that the images were found in different files, "showing the images were copied or moved," or on external storage devices and evidence showing "the recovery of numerous images of child pornography from the defendant's computer." *See Ballard v. State*, 537 S.W.3d 517, 523 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd). But "each case must be analyzed on its own facts." *Wise*, 364 S.W.3d at 905. "For computer-pornography cases, like all criminal cases, a court must assess whether the inferences necessary to establish guilt are reasonable based upon the cumulative force of all the evidence considered in the light most favorable to the verdict." *Id.* (citing *Hooper*, 214 S.W.3d at 13).

In this case, the evidence showed that all of the images of child pornography were found on appellant's cell phone and other electronic devices in appellant's possession and, although the pornographic images had been deleted, appellant did not dispute that they remained on the cell phone and other electronic devices when the police seized them. When asked by the police, appellant did not dispute that the laptop and cell phone belonged to him and provided the password for the laptop. The external storage devices—the SD cards and the USB drive that were seized from his vehicle and home—also contained numerous images of child pornography.

19

The detective testified that there were over 200 images of child pornography on the USB drive and thirty-three images of child pornography on the SD card found in appellant's home. *See, e.g.*, *Ballard*, 537 S.W.3d at 523 (including "numerous images" among types of evidence that may be sufficient to establish knowledge of child pornography). The detective further testified that the SD card that was found in appellant's vehicle and had an image of child pornography also had documents from legal proceedings connected to appellant, and the secretary testified that appellant used USB drives on his own.

Concerning the images of child pornography on appellant's cell phone, the detective testified that (i) those images had been uploaded to the phone with over 500 other images within a "3-minute span" on September 11, 2015, at around 5:00 a.m., which was about one week after appellant purchased the cell phone; (ii) the other images in this upload were pictures of appellant's family and selfies of appellant; and (iii) the pornographic images had been saved to the phone and then deleted. *See, e.g.*, *id.* (including evidence that images were moved or saved among types of evidence that may be sufficient to establish knowledge of child pornography). The sergeant testified that when he showed one of the images of child pornography that was on the cell phone to appellant, appellant's "exact words were 'Oh shit'" and appellant agreed that the females in the image "definitely appeared to be underage." Further, as to appellant's laptop, although no child pornography was found on it, the detective testified that there was only one user "Tallion K," the internet browsing history on the laptop had been deleted, and the quarantine log documented events with the user name "Tallion K" of over 1300 downloads on ninety-five days between November 12, 2012, and March 31, 2014, from known child pornography websites.

The jury also heard evidence that (i) specified images—identified by the unique number in the State's exhibit—were of underage females engaging in actual sexual intercourse and lewd exhibition of female genitals and breasts; (ii) most of the females in the images across all of the devices were of a similar age and race; (iii) there were images that were confirmed by NCMEC to be of child pornography; and (iv) images found on the SD cards and USB drive contained metadata that showed that the images were from the websites "jailbaits.in" and "xbbs.asia," which were websites that were in the quarantine log from appellant's laptop. Further, the jury was able to personally inspect the images. *See* Tex. Penal Code § 43.25(g)(2) (authorizing jury to make determination whether child who participated in sexual conduct was younger than eighteen years of age by personally inspecting photograph).

We again observe that to the extent appellant complains about the sufficiency of the evidence because the State did not identify the particular images on which it was relying for each count, appellant did not choose to elect after the State rested. *See Cosio*, 353 S.W.3d at 775 (explaining that defendant's decision to elect is purely strategic and that defendant may choose not to elect because "the State is jeopardy-barred from prosecuting on any of the offenses that were in evidence"); *Phillips*, 193 S.W.3d at 909–10 (explaining that trial court must require State to elect "once the State rests its case in chief on the timely request of defendant"). And the jury was instructed that it was "required to agree unanimously on which specific act on the part of the defendant, if any, and which image, if any, provide[d] the basis for your guilty verdict for each count." *See Casio*, 353 S.W.3d at 776 (explaining that when defendant's decision is not to elect, "jury must be instructed that it must unanimously agree on one incident of criminal conduct (or unit of prosecution), based on the evidence, that meets all of the essential elements of the single charged offense beyond a reasonable doubt"); *see also Vineyard v. State*, 958 S.W.2d 834, 838

21

(Tex. Crim. App. 1998) (concluding that possession of each image of child pornography is "allowable unit of prosecution" under section 43.26 of Texas Penal Code).

Although there was no direct evidence that appellant viewed the images before they were deleted from the electronic devices and the record does not establish which of the images that the jury based its guilty verdicts for Counts 3, 7, and 10, we conclude that the jury reasonably could have inferred from the cumulative force of all of the evidence that appellant intentionally or knowingly possessed an image of an underage female engaging in the lewd exhibition of female genitals, an image of an underage female engaging in actual or simulated sexual intercourse or deviate sexual intercourse, and an image of an underage female engaging in the lewd exhibition of the female breast below the top of the areola. *See Wise*, 364 S.W.3d at 905. Thus, considering the evidence in the light most favorable to the verdict, we conclude that the evidence was sufficient to support appellant's convictions for Counts 3, 7, and 10. We overrule appellant's fourth point of error.

**Right to Present Defense**

In his fifth point of error, appellant argues that he was deprived of his right to present a full defense because the trial court excluded evidence that appellant sought to offer to show that appellant's former law partner Rippy "was actually the one who possessed the images of child pornography in this case."

**Applicable Law and Standard of Review**

The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (quoting *Crane v. Kentucky*, 476 U.S. 683, 689-90 (1986)); *see also* U.S. Const. amends.

22

VI (compulsory process and confrontation of witnesses), XIV (due process). Showing that someone else committed the crime falls within that right. *See Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002) (explaining that "defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime"). However, "evidentiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense." *Williams v. State*, 273 S.W.3d 200, 232 (Tex. Crim. App. 2008) (quoting *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002)); *accord Wiley*, 74 S.W.3d at 405. And, when evidence comes in an objectionable form, neither the Texas nor the United States Constitutions require its admission. *See Davis v. State*, 313 S.W.3d 317, 329 n.26 (Tex. Crim. App. 2010) (observing that constitutional right to "meaningful opportunity to present a complete defense" is "qualified by requirement that the evidence be relevant and not excluded by an established evidentiary rule"); *Renteria v. State*, 206 S.W.3d 689, 697 (Tex. Crim. App. 2006) (concluding that admission of constitutionally relevant evidence is not required if it is otherwise objectionable under state law); *see also Crane*, 476 U.S. at 690 (explaining that "we have never questioned the power of States to exclude evidence through the application of evidentiary rules that themselves serve the interests of fairness and reliability—even if the defendant would prefer to see that evidence admitted").

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Henley v. State*, 493 S.W.3d 77, 82–83 (Tex. Crim. App. 2016); *Sandoval v. State*, 409 S.W.3d 259, 297 (Tex. App.—Austin 2013, no pet.). This standard applies even when the accused complains, as appellant does here, that the exclusion of evidence denied him his constitutional right to a meaningful opportunity to present a defense. *See Miller v. State*, 36 S.W.3d 503, 507 (Tex. Crim. App. 2001). An abuse of discretion does not occur unless the

23

trial court acts "arbitrarily or unreasonably" or "without reference to any guiding rules and principles." *State v. Hill*, 499 S.W.3d 853, 865 (Tex. Crim. App. 2016) (quoting *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990)). Further, we may not reverse the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016); *see Henley*, 493 S.W.3d at 83 ("Before a reviewing court may reverse the trial court's decision, 'it must find the trial court's ruling was so clearly wrong as to lie outside the zone within which reasonable people might disagree.'" (quoting *Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008))). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley*, 493 S.W.3d at 93; *Sandoval*, 409 S.W.3d at 297.

### Excluded Evidence

Among the defense's theories at trial, appellant contended that Rippy was the perpetrator of the alleged offense—the one who possessed the images of child pornography in this case. Evidence in support of this theory included that Rippy had access to and used appellant's laptop when no one else was at the office, he moved out of state shortly after the office closed and did not have further contact with appellant, and remaining items in the office, including Rippy's furniture, were moved to appellant's home when the office closed in November 2015. Appellant, however, contends that he was denied the opportunity to present this defense because the trial court disallowed other evidence that he sought to offer about Rippy. In particular, appellant complains about the exclusion of: (i) testimony from the sergeant concerning Rippy's reputation in the community, (ii) testimony from the detective about what Rippy told the detective during an interview that occurred in November 2017, and (iii) evidence

24

that Rippy contributed $5,000 to the then District Attorney's re-election campaign a few months before he moved. He argues that "all of this evidence should have been admitted based on the testimony of [the potential client], who put Rippy behind Appellant's computer during one of the dates and times that the images of child pornography were allegedly downloaded in this case."

The trial court sustained the State's objection to the sergeant's testimony about Rippy's reputation on relevancy and improper-character grounds, and we cannot conclude that the trial court abused its discretion in doing so. On voir dire examination outside the presence of the jury, the sergeant testified that he was aware of Rippy's reputation as a "womanizer" and that he was known for taking pictures of his "conquests" and showing those pictures and that Rippy "would have been the first one [he] would have talked to" if all he knew about the case was that child pornography had been found at the law office. Rippy's reputation of being a womanizer, however, does not have any tendency to make it more or less probable that Rippy was the possessor of the child pornography in this case. *See* Tex. R. Evid. 401 (stating test for relevant evidence). The sergeant testified that Rippy's reputation was regarding consenting adults. The trial court also reasonably excluded the evidence as improper character evidence. *See id.* R. 404(a) (generally prohibiting evidence of person's character or character trait to prove that on particular occasion person acted in accordance with character or trait).

Concerning the detective's testimony about what Rippy told him during the interview in November 2017, the trial court sustained the State's objection on hearsay grounds. *See id.* R. 801 (defining hearsay). On voir dire examination outside the presence of the jury, the detective testified that Rippy told him during the interview that Rippy was no longer practicing law but studying cyber security, and defense counsel asked him questions about what Rippy said about "ten other empty chairs in this case," "other tenants in his law firm," "clients who smashed

computers in that office," and "one client [who] even set fire to a computer." The detective testified that he did not believe that he asked Rippy for the names of tenants or the "ten other empty chairs," but he did remember Rippy telling him that a client had set a computer on fire and "mentioned someone smashing a computer."

Appellant argues he was not offering this testimony for the truth of the matter asserted but to show that the detective "had knowledge that Rippy identified other suspects in this case, but did not investigate them." *See id.* R. 801(d). But even if the trial court erred in excluding the detective's testimony for the limited purpose of showing his allegedly incomplete investigation in this case or in excluding the testimony about Rippy no longer practicing law and studying cyber security, appellant has not shown how the exclusion of this testimony violated his constitutional rights by preventing him from presenting his defense that Rippy was the perpetrator of the crime. *See Wiley*, 74 S.W.3d at 408 (observing that trial court's evidentiary ruling "did effectively preclude appellant from presenting *some* of his evidence that *perhaps* [another person] was *somehow* involved in the commission of the [offense]" but concluding that appellant failed to show how ruling was "so clearly erroneous that it violated his constitutional rights"); *see, e.g.*, *Segundo v. State*, 270 S.W.3d 79, 101–102 (Tex. Crim. App. 2008) (concluding that appellant's constitutional rights to present defense were not violated by trial court's exclusion of hearsay evidence where appellant "could present his defense without resort to unreliable hearsay").

As to the trial court's denial of appellant's request to offer evidence that Rippy made a political contribution to the District Attorney's re-election campaign four months before moving out of town, appellant objected to the trial court's ruling "under the Sixth Amendment right to put on a full defense." Appellant argued to the trial court that this evidence was relevant,

26

but the trial court disagreed with him and denied its admission, and we cannot conclude that the trial court abused its discretion in doing so. *See* Tex. R. Evid. 401. The fact that Rippy made a campaign contribution before leaving town does not have any tendency to make it more likely that he was the person who possessed the child pornography that was found on appellant's electronic devices.

In this case, appellant was not prevented from presenting the substance of his defense that Rippy was the perpetrator of the offense of possession of child pornography. Thus, even if we were to conclude that the trial court abused its discretion in excluding any of appellant's proffered evidence, we cannot conclude that his constitutional right to present a defense was violated. *See Wiley*, 74 S.W.3d at 408; *Potier*, 68 S.W.3d at 665 (holding that "the exclusion of a defendant's evidence will be constitutional error only if the evidence forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense"). We overrule appellant's fifth point of error.

**Jury Instruction on Lesser-Included Offense of Attempted Possession**

In his sixth point of error, appellant argues that he was improperly denied a jury instruction on the lesser-included offense of attempted possession of child pornography because the evidence reflected that the images had been deleted from the electronic devices and that they were not viewable without an extraction tool.

**Standard of Review**

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*,

175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error).

Determining whether a defendant is entitled to a lesser-included-offense instruction also is a two-part analysis. *Goad v. State*, 354 S.W.3d 443, 446 (Tex. Crim. App. 2011); *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007). We first consider whether the offense contained in the requested instruction is a lesser-included offense of the charged offense. *Rice v. State*, 333 S.W.3d 140, 144 (Tex. Crim. App. 2011); *Hall*, 225 S.W.3d at 535. The first step of the analysis is a question of law, and it does not depend on the evidence to be produced at trial. *Rice*, 333 S.W.3d at 144; *see Hall*, 225 S.W.3d at 535 (adopting pleadings approach for first step: "the elements and the facts alleged in the charging instrument are used to find lesser-included offenses"). "An offense is a lesser-included offense if . . . it consists of an attempt to commit the offense charged or an otherwise included offense." *See* Tex. Code Crim. Proc. art. 37.09(4).

The second step of the analysis requires us to decide whether the admitted evidence supports the instruction. *Goad*, 354 S.W.3d at 446; *Rice*, 333 S.W.3d at 144. We must determine whether there is some evidence in the record that would permit a jury to rationally find that, if the defendant is guilty, he is guilty only of the lesser-included offense. *Rice*, 333 S.W.3d at 145; *Guzman v. State*, 188 S.W.3d 185, 188–89 (Tex. Crim. App. 2006). "The evidence must establish the lesser-included offense as 'a valid, rational alternative to the charged offense.'" *Rice*, 333 S.W.3d at 145 (quoting *Hall*, 225 S.W.3d at 536); *Segundo*, 270 S.W.3d at 91.

28

"[T]here must be some evidence directly germane to the lesser-included offense for the finder of fact to consider before an instruction on a lesser-included offense is warranted." *Goad*, 354 S.W.3d at 446 (quoting *Hampton v. State*, 109 S.W.3d 437, 441 (Tex. Crim. App. 2003)). We consider all of the evidence admitted at trial, not just the evidence presented by the defendant. *Id.* (citing *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex. Crim. App. 1993)). "'Anything more than a scintilla of evidence is sufficient to entitle a defendant to a lesser charge.'" *Goad*, 354 S.W.3d at 446 (quoting *Bignall v. State*, 887 S.W.2d 21, 23 (Tex. Crim. App. 1994)). We may not consider "'[t]he credibility of the evidence and whether it conflicts with other evidence or is controverted.'" *Id.* at 446–47 (quoting *Banda v. State*, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994)).

**Attempted Possession of Child Pornography**

The State concedes that attempted possession of child pornography is a lesser-included offense of possession of child pornography. *See* Tex. Code Crim. Proc. art. 37.09(4); *see also* Tex. Penal Code § 15.01(a) ("A person commits an offense if, with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."). Thus, the dispositive question is whether there is some evidence in the record that would permit a jury to rationally find that, if appellant was guilty, he was guilty only of attempted possession. *See Rice*, 333 S.W.3d at 145.

Appellant relies on the evidence that the images were deleted from the electronic devices and not viewable without extraction tools as support for his position that the trial court was required to instruct the jury on the lesser-included offense of attempted possession of child pornography. There was no evidence, however, that appellant attempted but failed to possess the

images on his cell phone or other electronic devices. In order to attempt to access images on his electronic devices, appellant would have to had known that they were on the devices. The defense theory to the jury was that he was unaware of the images. If appellant was unaware of the images, he did not knowingly or intentionally possess them. Alternatively, if he was aware that the images were on his cell phone or other electronic devices, his possession of the cell phone or other devices completed the offense of possession of child pornography. Thus, on this record, there was no evidence that would have permitted the jury to rationally find that, if he was guilty, he was guilty only of attempted possession of child pornography. *See id.* We overrule appellant's sixth point of error.

## CONCLUSION

Having overruled appellant's points of error, we affirm the judgments of conviction.

_____

Melissa Goodwin, Justice

Before Justices Goodwin, Kelly, and Smith

Affirmed

Filed: February 10, 2021

Do Not Publish